# In the United States Court of Federal Claims

No. 20-1285

(Filed: July 20, 2022)

```
*****************************************
HAMILTON SQUARE, LLC,                    *
                                         *    Lack of Subject-Matter Jurisdiction;
                    Plaintiff,           *    RCFC 12(b)(1); Failure to State a
                                         *    Claim; RCFC 12(b)(6); Breach of
            v.                           *    Contract; Breach of the Implied Duty
                                         *    of Good Faith and Fair Dealing;
THE UNITED STATES,                       *    Contract Interpretation; Request to
                                         *    Amend Complaint.
                    Defendant.           *
*****************************************
```

*Joanne Leah Castella*, Burke, Williams & Sorensen, LLP, Oakland, CA, counsel for Plaintiff.

*Allision Schilling Vicks*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

## OPINION AND ORDER

**DIETZ, Judge.**

      Hamilton Square, LLC ("Hamilton") brings suit against the United States alleging breach of contract and breach of the implied duty of good faith and fair dealing in connection with Hamilton's 2005 purchase of a plot of land formerly used as a naval exchange gas and public works station. Hamilton alleges that the United States Department of the Navy ("Navy") breached its contractual obligations by failing to remediate the land after Hamilton notified the Navy of newly discovered contamination in 2019. The government seeks to dismiss Hamilton's amended complaint as untimely pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and, alternatively, for failure to state a breach of contract claim pursuant to RCFC 12(b)(6). Hamilton opposes the motion, and, in the alternative, requests that the Court grant it leave to further amend its complaint.

      The Court finds that Hamilton has sufficiently stated a claim for breach of contract based on the Navy's failure to remediate the newly discovered contaminants on the property after receiving notice from Hamilton and that such claim is timely. Hamilton's other breach of contract claims are dismissed for failure to state a claim or as untimely. The Court also finds that Hamilton has sufficiently stated a claim for breach of the implied duty of good faith and fair dealing. Accordingly, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion to dismiss. The Court **DENIES** Hamilton's request to further amend its complaint.

I.   **BACKGROUND**

This dispute concerns 2.7 acres of land ("Property") located in Novato, California that was previously owned by the Navy. Am. Compl. ¶ 7, ECF No. 19. The Property was used from the mid-1970s through the early 1990s as a Naval Exchange gas station and public works support area, and it housed several underground gasoline storage tanks. *Id.* ¶ 8. After closure of the service stations and removal of the underground storage tanks, the Property was designated by the Navy as property to be sold for commercial use as part of a base realignment and closure program. *Id.* ¶¶ 7-8; App. to Def.'s Mot. to Dismiss at 62 (Deed at 1), ECF No. 22-1 [hereinafter Def.'s App.].[1] During preparation for sale, the Navy engaged in various clean up and remediation efforts to make the Property suitable for commercial use. Am. Compl. ¶¶ 1, 10-15.

To begin the site closure process, the Navy released a draft work plan in January 1998 for soil and groundwater remediation. Am. Compl. ¶ 10. The objective of the plan was to achieve site closure by demonstrating that the Property will not pose an unacceptable threat to human health based on its planned use as a commercial property. *Id.* ¶¶ 10-12. The Navy released the final corrective action plan ("CAP") in March 2002. *Id.* ¶ 14. The CAP provided that the Navy was the lead agency administering the remediation and closure of the Property and that the Property was suitable for its intended commercial use. *Id.* ¶¶ 14-15.

In August 2003, the Navy released the Finding of Suitability to Transfer ("FOST"). Am. Compl. ¶ 16. The purpose of the FOST was "to determine whether [the Property is] environmentally suitable for transfer by deed under Section 120(h) of the Comprehensive Environmental Response, Contamination, and Liability Act [("CERCLA")] in a manner protective of human health and the environment." *Id.*; Def.'s App. at 6 (FOST at 1). The FOST stated that "[t]he only outstanding environmental issues [on] the [Property] are petroleum contamination in groundwater and residual contamination in soil" and that "[a]ll other environmental issues [on] the [Property] have been resolved." Def.'s App. at 6 (FOST at 1). The FOST ultimately concluded that the Property "is environmentally suitable for transfer by deed for commercial use, subject to compliance with the covenants, conditions, and restrictions set forth in this FOST." *Id.* at 28 (FOST at 23).

The FOST required that the deed transferring the Property "include a covenant by the United States, made pursuant to the provisions of CERCLA § 120(h)(3)(A)(ii)(II), warranting that any remedial or corrective action found to be necessary after the date of the deed shall be conducted by the United States." Def.'s App. at 25 (FOST at 20). CERCLA applies to "any contract for the sale or other transfer of real property which is owned by the United States and on

---

[1] The government attached the following documents as appendices to its motion to dismiss and its reply: the Finding of Suitability of Transfer; the first amendment to the FOST report; the California Department of Toxic Substances Control concurrence with the FOST report; the Quitclaim Deed for the Property; the covenant for restrict use of property and environmental restriction; and two soil vapor investigation reports from consultant Ninyo & Moore from June 12, 2019 and October 11, 2019. *See generally* Def.'s App; App. to Def.'s Reply, ECF No. 30-1. The Court may rely on these documents when evaluating the government's motion to dismiss because these documents are referenced in Hamilton's amended complaint and, thus, are incorporated into the pleadings. *See* RCFC 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that the court "must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

which any hazardous substance was stored for one year or more, known to have been released, or disposed of." 42 U.S.C. § 9620(h)(3). Under CERCLA, any contract for the sale of property must include a notice of "the type and quantity of such hazardous substances" and "the time at which such storage, release, or disposal took place." *Id.* § 9620(h)(3)(i)(I-II). CERCLA contains a list of covered hazardous substances, *see* 40 C.F.R. § 302.4(a), and it expressly excludes petroleum. *See* 42 U.S.C. § 9601(14). The CERCLA notice in this case identified lead as the only hazardous substance that was known to have been stored, released, or disposed of on the Property. Def.'s App. at 77 (Deed at Ex. D). CERCLA requires a covenant warranting that all necessary remedial action has been conducted prior to the date of transfer and that any remedial action found to be necessary after the date of the transfer "shall be conducted by the United States." *See* 42 U.S.C. § 9620(h)(3)(ii)(I-II).

In 2004, the Navy released an invitation for bids to purchase the Property as a "Commercial/Retail Development Opportunity." Am. Compl. ¶ 25. The invitation directed potential bidders to the FOST, which was incorporated into the invitation for bids by reference and contained a draft copy of the proposed deed. *Id*. ¶¶ 27-29. Hamilton submitted a bid to the Navy in the amount of $900,000, and its bid was accepted. *Id.* ¶ 29. Hamilton and the Navy finalized the sale and executed the deed ("Deed") on April 18, 2005. *Id.* ¶ 33. The Deed included a restriction on residential use, which prohibited the use of the Property for residential purposes. *Id.* ¶ 36. However, the Deed permitted Hamilton to request approval from the Navy for a variance or termination of such restriction subject to approvals by the state and local government agencies. *Id.*

Starting in 2013, Hamilton sought to develop the Property for residential use. Am. Compl. ¶ 46. After several years of coordinating with the City of Novato and state and local government agencies, Hamilton began the process of subsurface soil and groundwater remediation and clean-up aimed at improving the Property to meet residential standards. *Id.* ¶¶ 47, 51. As part of this effort, Hamilton removed 10,000 tons of impacted soil from the Property and replaced it with clean fill. *Id.* ¶ 52. At the direction of state and local government agencies and its environmental consultant, Hamilton conducted additional soil vapor sampling to analyze the Property's suitability for residential use. *Id*. ¶¶ 53-60. The soil vapor samples from the Property showed that "[t]he contaminants on the Subject Property have been found at levels that exceed the screening levels for commercial/industrial use in effect on the date of the Deed." *Id.* ¶ 61. Following this discovery, Hamilton notified the Navy of the contaminants on the Property and attempted to get the Navy to perform additional remediation. *Id*. ¶ 65. Despite Hamilton's efforts, the Navy neither attempted to remediate the Property nor compensated Hamilton for costs to remediate the Property. *Id*. ¶ 64. As of the date of Hamilton's amended complaint, Hamilton has spent over $3.5 million to remediate the Property. *Id.*

Hamilton filed a complaint in this Court on September 29, 2020, alleging that the Navy breached its obligations under the Deed and breached the implied duty of good faith and fair dealing. *See* Compl., ECF No. 1. Hamilton later amended its complaint to plead more facts following a motion to dismiss by the government. *See* Am. Compl.; Def.'s Mot. to Dismiss, ECF No. 16. On May 7, 2021, the government filed a motion to dismiss Hamilton's amended complaint as untimely pursuant to RCFC 12(b)(1) and for failure to state a claim pursuant to RCFC 12(b)(6). *See* Def.'s Mot. to Dismiss, ECF No. 22 [hereinafter Def.'s Mot.]. Hamilton

opposed the motion and, alternatively, requested another opportunity to amend its complaint. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 27 [hereinafter Pl.'s Opp'n]. The Court held oral argument on the government's motion on November 3, 2021. *See* ECF No. 31.

## II.  LEGAL STANDARDS

This Court is a court of limited jurisdiction. *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). This Court's jurisdiction is defined by the Tucker Act, which waives the sovereign immunity of the United States for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a).

This Court's jurisdiction is barred "unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. This six-year statute of limitations is "absolute" and is not subject to equitable tolling.[2] *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134-39 (2008). A claim against the United States first accrues on the date when "all events have occurred that are necessary to enable the plaintiff to bring suit." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). The focus for when a claim accrues is at the time of the defendant's actions, "not upon the time at which the *consequences* of the acts became most painful." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (emphasis in original). Additionally, the claim only accrues once "the plaintiff was or should have been aware of [the claim's] existence." *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed. Cir. 1988). However, a plaintiff "does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995). For a breach of contract claim, the "cause of action accrues when the breach occurs." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011).

A motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1) challenges the court's "general power to adjudicate in specific areas of substantive law[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss for lack of subject-matter jurisdiction, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

A motion to dismiss a claim pursuant to RCFC 12(b)(6) challenges this Court's ability to "exercise its general power with regard to the facts peculiar to the specific claim." *Palmer*, 168 F.3d at 1313. When deciding a motion to dismiss for failure to state a claim upon which relief may be granted, the Court likewise construes the complaint's allegations in favor of the plaintiff.

---

[2] This Court grants equitable tolling in breach of contract claims "where the government fraudulently or deliberately conceals material facts relevant to a plaintiff's claim[.]" *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed. Cir. 1988). Hamilton has not alleged that the government fraudulently or deliberately concealed any material facts relevant to its claims. *See generally* Am. Compl.

4

RCFC 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982). The Court must inquire whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the Court must assess whether "a claim has been stated adequately" and whether "it may be supported by [a] showing [of] any sets of facts consistent with the allegations in the complaint." *Id.* at 563. The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

## III.  DISCUSSION

Hamilton asserts two causes of action: breach of contract and breach of the implied duty of good faith and fair dealing. *See* Am. Compl. ¶¶ 66-78. For the reasons discussed below, the Court finds that Hamilton has sufficiently stated a breach of contract claim based on the Navy's alleged failure to remediate the Property after Hamilton provided notification of newly discovered chloroform and petroleum contamination and that such claim is timely. Hamilton's other breach of contract claims are dismissed for failure to state a claim or as untimely. The Court also finds that Hamilton has sufficiently stated a claim for breach of the implied duty of good faith and fair dealing. The Court denies Hamilton's request to amend its complaint.

### A.  Hamilton's Breach of Contract Claim

Hamilton alleges that the Navy breached its obligations under the Deed by failing to: (1) remediate the Property, either through performance or payment of costs, after Hamilton provided notice of hazardous substances, including petroleum, that were existing on the Property prior to the date of the Deed; (2) adequately perform ongoing corrective action as required by the Deed; and (3) ensure that the Property was suitable for commercial development. Am. Compl. ¶ 69(a-c). The government argues that Hamilton has not identified any obligation in the Deed that has been breached by the Navy and that its breach of contract claim is untimely. *See* Def.'s Mot. at 11-21.

For a breach of contract claim, the plaintiff must show a valid contract between the parties, an obligation arising out of the contract, a breach of that obligation, and damages caused by the breach. *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). When considering a motion to dismiss a breach of contract claim, the Court must "interpret the contract's provisions to ascertain whether the facts plaintiff alleges would, if true, establish a breach of contract." *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014); *see also S. Cal. Edison v. United States*, 58 Fed. Cl. 313, 321 (2003) ("Contract interpretation is a matter of law and thus may be addressed by the Court in resolving a motion to dismiss."). "Contract interpretation begins with the language of the written agreement." *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003). The terms of the contract are given "their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Harris v. Dep't of Veteran Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998). Additionally, a contract should "be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts." *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). "An ambiguity exists when there is more than one reasonable

interpretation of a contract." *King Fisher Co. v. United States*, 51 Fed. Cl. 94, 99 (2001) (citing *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996)).

> 1. <u>Hamilton has sufficiently stated a breach of contract claim based on the Navy's alleged failure to remediate the Property after notification of newly discovered contamination, and this claim is timely.</u>

Hamilton alleges that the Navy breached the terms of the Deed by failing to remediate newly discovered chloroform and petroleum contamination on the Property after notification from Hamilton. Am. Compl. ¶ 69(c). The government argues that Hamilton does not allege facts sufficient to show that chloroform existed on the Property prior to the Deed, as would be required to trigger the Navy's obligation to remediate, and that the Navy does not have an obligation to remediate petroleum because it is excluded from CERCLA's definition of hazardous substances. *See* Def.'s Mot. at 16-21; Def.'s Reply at 3-6, ECF No. 30. Further, the government argues that this claim is time barred because the breach, to the extent that it occurred, accrued at the time of transfer. *See* Def.'s Mot. at 10-16. The Court finds that Hamilton has sufficiently stated a breach of contract claim based on the Navy's alleged failure to remediate the newly discovered contaminants on the Property and that the claim is timely.

Hamilton has alleged enough facts to demonstrate a plausible breach by the Navy of its obligation to remediate chloroform. Section II.K ("Section K") of the Deed contains the CERCLA notices, assurances, covenants, and declarations regarding hazardous substances and sets forth procedures that apply if a previously unidentified hazardous substance is discovered on the Property. Def.'s App. at 68-69 (Deed at II.K). Section K(3) imposes an obligation on the Navy to remediate hazardous substances that were present on the Property prior to the date of the Deed. Specifically, Section K(3) states:

> GRANTOR covenants for the benefit of the GRANTEE . . . as a covenant running with the land, that GRANTOR shall conduct any additional remedial action found to be necessary after the date of this Deed for any hazardous substance existing on the Property prior to the date of this Deed.

*Id.* at 68 (Deed at II.K(3)). Section K(5) requires Hamilton to notify the Navy "within 90 days after learning of any previously unidentified condition of the Property that suggests a response action is necessary" and to "provide . . . reasonable access to the records and personnel of [Hamilton] . . . for purposes of defending or resolving the need for additional response action." Def.'s App. at 69 (Deed at II.K(5)).

The Navy's obligation to remediate under Section K(3) applies to "any hazardous substance existing on the Property prior to the date of [the] Deed." Def.'s App. at 68 (Deed at II.K(3)). Despite the government's arguments to the contrary, it is not limited only to those hazardous substances identified by the Navy as having been stored, disposed of, or released prior to the transfer. *See* Def.'s Reply at 4; Def's App. at 77 (Deed at Ex. D) (identifying lead as the only known hazardous substance). Hamilton alleges that it discovered chloroform in 2019, Am. Compl. ¶¶ 55-56, and that chloroform is a hazardous substance under CERCLA. *See* Pl.'s Opp'n at 8; *see also* 40 C.F.R. § 302.4. Thus, upon notification from Hamilton of the newly discovered

chloroform, the Navy was obligated to remediate the chloroform if the chloroform existed on the Property prior to transfer (and if remedial action is "found to be necessary").

Whether the chloroform existed on the Property prior to the date of the Deed is a question of fact to be resolved through discovery. Hamilton alleges that the "contaminants on the Subject Property have been found at levels that exceed the screening levels for commercial/industrial use in effect on the date of the Deed[,]" and that such contamination resulted from the Navy's activities prior to the transfer because Hamilton did not introduce chloroform to the Property. Am. Compl. ¶ 61; *see* Oral Arg. Tr. 40:7-19, ECF No. 34. At this stage, assuming these allegations to be true and drawing all reasonable inferences in Hamilton's favor, this is sufficient to state a plausible claim for breach of contract and to avoid dismissal under RCFC 12(b)(6).[3] *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (stating that when assessing a motion under RCFC 12(b)(6), the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor").

Hamilton also claims that the Deed contains an obligation for the Navy to remediate petroleum and petroleum derivatives that it discovered on the Property in 2019. *See* Pl.'s Opp'n at 9-12. The Deed is ambiguous as to whether the Navy is obligated to remediate previously unidentified petroleum contamination on the Property. Petroleum and its derivatives are expressly excluded from the definition of "hazardous substances" for the purposes of the CERCLA warranty. *See* 42 U.S.C. § 9601(14, 33). This exclusion makes Section K, on its own, inapplicable to the newly discovered petroleum. The Deed, however, includes Section II.L ("Section L"), which states:

> GRANTEE agrees . . . that upon learning of any previously unidentified release or threatened release of petroleum or petroleum derivative (including without limitation MTBE) from, on, under or about the Property and any related soils or ground or surface waters, which may have been associated with Department of Defense activities at or about the Property, GRANTEE will notify GRANTOR by the following the notification procedures set forth in [Section K(5)] above.

Def.'s App. at 69 (Deed at II.L). The government argues that Section L requires only that Hamilton *notify* the Navy of any unidentified release of petroleum, with no "follow-on remediation obligation for petroleum." Def.'s Reply at 9. Hamilton, however, interprets Section L, in the context of the entire Deed, to impose an obligation on the Navy for the "remediation of petroleum on the Property." Pl.'s Opp'n at 12.

Both interpretations are reasonable. The government is correct that, by itself, the plain language of Section L does not obligate the Navy to remediate previously unidentified releases of petroleum discovered on the Property. On the other hand, however, the cross-reference to the notification procedures of Section K(5) in Section L could reasonably be interpreted as intending

---

[3] The government argues that Hamilton "does not allege that it informed the Navy of the presence of a CERCLA hazardous substances" and, thus, has not followed its obligations under the Deed. Def.'s Reply at 6 n.3. During oral argument, Hamilton represented to the Court that it timely notified the Navy of the chloroform. *See* Oral Arg. Tr. 60:3-16, ECF No. 34. For the purposes of this motion, the Court assumes that Hamilton has followed the proper notification procedures.

to treat previously unidentified petroleum as equivalent to a previously unidentified CERCLA hazardous substance. Section K(5) requires that Hamilton notify the Navy "after learning of any previously unidentified condition of the Property *that suggests a response action is necessary*." Def.'s App. at 69 (Deed at II.K(5)) (emphasis added). Like the discovery of a previously unidentified hazardous substance that existed on the Property prior to the Deed, the discovery of previously unidentified petroleum that may have been associated with Navy activities on the Property could trigger remediation action by the Navy. More discovery is needed to clarify the intent of this provision. Accordingly, construing the ambiguity in Hamilton's favor, Hamilton has alleged enough facts to demonstrate a plausible breach by the Navy of its obligation to remediate the newly discovered petroleum.[4] *Doe v. United States*, 95 Fed. Cl. 546, 554 (2010) ("The court's task in considering a motion to dismiss for failure to state a claim is not to determine whether a plaintiff will ultimately prevail, but 'whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007))).

The Court must now determine whether Hamilton's breach of contract claim arising from the Navy's alleged failure to remediate the previously unidentified chloroform and petroleum falls within this Court's six-year statute of limitations. Hamilton argues that its "claim accrued in October 2019, when Hamilton informed the Navy of the environmental conditions on the Property and the Navy failed to conduct remedial action as required by the Deed." Pl.'s Opp'n at 4. The government argues, with respect to petroleum, that Hamilton's claims accrued at the time of the transfer in April 2005 because, at this time, "Hamilton knew of the contamination" and "its . . . complaints are related to that known contamination." Def.'s Mot. at 14.

The Court finds that Hamilton's claim that the Navy failed to remediate the previously unidentified contaminants after Hamilton provided notice is timely. The government's argument that the claim accrued at the time of the transfer because Hamilton knew of the contamination misunderstands the claim. Hamilton's breach of contract claim is not based on contaminants that were known to exist on the Property at the time of the Deed. Instead, Hamilton's claim arises from the Navy's failure to remediate newly discovered contamination after Hamilton provided notice to the Navy. For a breach of contract claim, the "cause of action accrues when the breach occurs." *Holmes*, 657 F.3d at 1317. Hamilton alleges that it discovered previously unidentified chloroform and petroleum on the Property in June 2019. Am. Compl. ¶ 55. The Deed requires that Hamilton notify the Navy in writing "within 90 days after learning of any previously unidentified condition of the Property that suggests a response action is necessary." Def.'s App. at 69 (Deed at II.K(5), II.L). Hamilton alleges that it provided such notice to the Navy. Am. Compl. ¶ 65. Hamilton states that it communicated with the Navy between October 8, 2019, and the date it filed its complaint and that, thus far, the Navy has refused to fulfill its obligations to remediate the Property. *Id*. Therefore, its claim that the Navy breached its obligation under the Deed to remediate the newly discovered contaminants accrued when the Navy refused to remediate the contamination, which occurred at some point on or after October 8, 2019.

---

[4] For the purposes of this motion, the Court construes Hamilton's allegation as seeking the Navy to remediate a previously unidentified release of petroleum that may have been associated with Department of Defense activities on or about the Property. Petroleum contamination that was known to exist on the Property at the date of the Deed is not covered by Section L because it was known to the parties and disclosed to Hamilton as part of the Deed. *See* Def.'s App. at 64 (Deed at II.C).

Hamilton filed its complaint in this Court on September 29, 2020, *see* Compl., so Hamilton's claim falls well within this Court's six-year statute of limitations.

> 2. <u>Hamilton fails to state a claim for breach of contract based on its allegation that the Navy failed to perform ongoing corrective action on the Property.</u>

Hamilton claims that the Navy breached its obligation under the contract by "fail[ing] to adequately perform the required ongoing corrective action on the Subject Property as required by the Deed." Am. Compl. ¶ 69. Hamilton claims that this obligation is found in Section II.J ("Section J") of the Deed. *See* Pl.'s Opp'n at 6-7. Section J(1) grants the Navy "the right . . . to enter and inspect the Property to ensure the viability of the selected land use controls . . . or to perform ongoing corrective actions." Def.'s App. at 67 (Deed at II.J). It provides that "[t]he ongoing corrective actions include sampling and maintenance of subsurface groundwater wells and soil-gas probes as described in the [CAP] . . . , which the CAP is referenced in the FOST." *Id.* The FOST states that the CAP for the Property consisted of a biosparging system "located to the North of the Property by a minimum of 250 feet [which] is not intended to affect the Property" and "quarterly groundwater monitoring[.]" *Id.* at 19-20 (FOST at 14-15). Aside from this, the Deed does not provide any further definition of the term "ongoing corrective actions." Section J(2) requires that the Navy and Hamilton "agree to cooperate in good faith to minimize any conflict between necessary ongoing remedial and corrective actions being conducted by [the Navy] at the Property, and the operations and construction activities of [Hamilton.]" *Id.* at 68 (Deed at II.J).

The plain language of Section J does not *obligate* the Navy to perform any ongoing corrective actions on the Property. It merely gives the Navy the *right to access* the Property for the purpose of performing ongoing corrective actions and obligates the parties to cooperate to minimize disruptions to each party's activities on the Property. Unlike the Navy's obligation to remediate previously unidentified contaminants, which is at least arguably found in the Deed, the Deed contains no provision obligating the Navy to generally perform ongoing corrective actions. Aside from its allegation that the Navy failed to remediate the previously unidentified chloroform and petroleum as Hamilton alleges is required by the Deed, Hamilton neither alleges that the Navy failed to perform a particular corrective action required by the Deed nor identifies when such a failure occurred. Because Hamilton has not demonstrated that the Deed creates an obligation for the Navy to perform ongoing corrective actions, its claim must be dismissed.

> 3. <u>Hamilton fails to state a claim for breach of contract based on its allegation that the Navy failed to ensure that the Property was suitable for commercial development, and this claim is untimely.</u>

Hamilton alleges that the Navy breached the Deed when it "failed to ensure that the Subject Property was suitable for commercial development." Am. Compl. ¶ 69(b). This alleged breach may be interpreted in two ways: that the Navy failed to ensure that the Property *was* suitable for commercial development *on the date of the Deed* or that the Navy failed to ensure that the Property *remained* suitable for commercial development *after the date of the Deed*.

If Hamilton's claim is that the Navy failed to ensure that the Property *was* suitable for commercial development *on the date of the Deed*, this claim falls outside of this Court's six-year statute of limitations. A claim challenging whether the Property was suitable for commercial use at the time of the Deed or whether the Navy had adequately performed remediation of the Property prior to the date of the Deed needed to be brought within six years of the date of the Deed—April 18, 2005. If the Property were not suitable for commercial development at that time, the date of the Deed is when "all events [had] occurred to fix the [Navy's] alleged liability" entitling Hamilton to challenge the terms of the Deed and the condition of the Property as described in the Deed. *See Martinez*, 333 F.3d at 1303. Hamilton brought its claim on September 29, 2020, over fifteen years after it executed the Deed. Accordingly, this claim is time-barred and must be dismissed for lack of subject-matter jurisdiction.

If Hamilton's claim is that the Navy failed to ensure that the Property *remained* suitable for commercial use *after the date of the Deed*, Hamilton fails to state a claim because the Deed does not contain a provision that obligates the Navy to ensure that the Property remains suitable for commercial use after the Deed. Section II.C ("Section C") of the Deed provides that Hamilton accepted the Property "as is" and that the Navy was "not liable for any latent or patent defects in the Property, except to the extent provided" in the Deed. Def.'s App. at 64 (Deed at II.C). While the Deed states that the Navy "found and determined that the [P]roperty is suitable for transfer pursuant to the [FOST]," Def.'s App. at 62 (Deed at 1), and the FOST concluded that the Property "is environmentally suitable for transfer by deed of commercial use," *id*. at 28 (FOST at 23), the Deed does not contain any language that obligates the Navy to ensure the continued commercial viability of the Property after the date of the Deed. Therefore, Hamilton cannot state a claim for breach of contract based on the Navy's failure to ensure that the Property remained suitable for commercial development after the date of the Deed.

### B.     Hamilton's Breach of the Implied Duty of Good Faith and Fair Dealing

Hamilton also brings a cause of action alleging that the Navy breached its implied duty of good faith and fair dealing. Am. Compl. ¶¶ 71-78. The implied duty of good faith and fair dealing "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). The implied duty depends, in part, on what the contract promises or disclaims because of "the duty's focus on 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party[,]' which obviously depend on the contract's allocation of benefits and risks." *Metcalf Constr. Co., Inc. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts § 205 cmt. A (1981)). "While the implied duty exists because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain, the nature of that bargain is central to keeping the duty focused on 'honoring the reasonable expectations created by the autonomous expressions of the contracting parties.'" *Id*. "The implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). "[A]ny breach of [the implied duty] has to be connected, though is not limited, to the bargain struck in the contract." *Metcalf*, 742 F.3d at 994.

The Court finds that Hamilton has sufficiently stated a plausible claim that the Navy breached the implied duty of good faith and fair dealing. As discussed above, Hamilton has sufficiently alleged that the Navy breached a provision in the Deed by refusing to remediate the previously unidentified chloroform and petroleum on the Property after Hamilton provided notification to the Navy. *See supra* Section III.A(1). Thus, it is not necessary for Hamilton to invoke the doctrine of good faith and fair dealing to impose the same obligation on the Navy. *See BGT Holdings LLC v. United States*, 984 F.3d 1003, 1016 (Fed. Cir. 2020) (providing that a sufficiently plead breach of contract claim, thereby providing an avenue for relief, "preempt[s] the need to invoke the doctrine of good faith and fair dealing").

However, Hamilton also alleges that the Navy breached the implied duty "by failing to diligently perform[] all ongoing obligations required by the Deed, including performing ongoing corrective actions required by the Navy after the date of the Deed to protect human health and the environment with respect to the contaminants (including petroleum products) and to ensure that the Subject Property was suitable for commercial development." Am. Compl. ¶ 75. While these obligations are not contained in the Deed as express provisions, a breach of the implied duty does not necessitate a violation of an express provision. *See Metcalf*, 742 F.3d at 991. Hamilton alleges that "the Navy's conduct destroyed its reasonable expectations regarding the fruits of the Deed." Am. Compl. ¶ 78; *see Centex*, 395 F.3d at 1304. Whether Hamilton's expectations and the Navy's conduct, in the context of the Deed, were reasonable is a fact-intensive inquiry. This determination depends on the express terms of the Deed, including its allocation of risks and benefits, in combination with the nature of the bargain struck by Hamilton and the Navy and their respective expectations. Thus, Hamilton's claim warrants further exploration during discovery, and the government's motion to dismiss is denied.

### C.     Hamilton's Request to Amend its Complaint

To the extent the Court grants the government's motion to dismiss, Hamilton requests leave to amend its complaint to plead additional facts. Pl.'s Opp'n at 15. RCFC 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Further, it states that "[t]he court should freely give leave when justice so requires." RCFC 15(a)(2). The decision to grant leave to amend a complaint is within the discretion of the Court. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 331 (1971). However, granting a motion for leave to amend is not appropriate in certain circumstances, such as when the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile if it could not survive a dispositive pretrial motion. *Kemin Foods, L.C. v. Pigmentos Vegetales Del Cenro S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006). To amend a complaint, the moving party "must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Id.*

The Court denies Hamilton's request to amend its complaint because such an amendment would be futile. The Court dismissed, as untimely, Hamilton's breach of contract claim that the Navy failed to ensure the Property was suitable for commercial development as of the date of the Deed. *See supra* Section III.A(3). Hamilton cannot allege facts that would change the date of accrual of this claim and avoid its dismissal as untimely. The Court also dismissed Hamilton's

11

breach of contract claims alleging that the Navy failed to perform ongoing corrective actions as required by the Deed and failed to ensure that the Property remained suitable for commercial use. *See supra* Sections III.A(2-3). The Court dismissed these claims because the Deed does not contain such obligations on the part of the Navy. Hamilton cannot allege facts that would change the obligations contained in the Deed. For these reasons, allowing Hamilton to amend its complaint to plead additional facts with respect to these claims would be futile, and Hamilton's request to amend its complaint is denied.

## IV.   CONCLUSION

Accordingly, the government's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion to dismiss is **GRANTED** with respect to Hamilton's breach of contract claims based on the Navy's failure to adequately perform the required ongoing corrective actions on the Property as required by the Deed and failure to ensure that the Property was suitable for commercial development. These claims are **DISMISSED WITH PREJUDICE**.

The motion to dismiss is **DENIED** with respect to Hamilton's breach of contract claim based on the Navy's failure to remediate the newly discovered contaminants on the Property after receiving notice from Hamilton and Hamilton's claim that the Navy breached the implied duty of good faith and fair dealing. Hamilton's request to amend its complaint is **DENIED**.

The parties **SHALL FILE** a joint status report **on or before August 19, 2022**, setting forth a proposed schedule for further proceedings in this case.

**IT IS SO ORDERED.**

                                         s/ Thompson M. Dietz
                                         THOMPSON M. DIETZ, Judge